## (July 9, 1963)

■ BRENDAN KELLY, Appellant, v. MICHAEL DALY, Respondent.

APPEAL from a judgment of the Supreme Court in favor of defendant, entered July 23, 1962 in New York County, upon a decision of the court at a Special and Trial Term, without a jury.

Judgment affirmed, with costs to respondent.

McNALLY and BASTOW, JJ. (dissenting). On Tuesday, Election Day, November 4, 1958, plaintiff, a New York City policeman, reported for duty at 4:00 A.M. His tour of duty ended at 8:30 P.M. when he returned with the election material to the 52nd Precinct, Bronx County, to which he had been temporarily assigned for election duty. Defendant, a fellow officer, offered to transport plaintiff in defendant's motor vehicle to the 50th Precinct, plaintiff's permanent precinct, where he was required to report after his tour of duty. At about 10:30 P.M. plaintiff and defendant, together with two other policemen, proceeded in defendant's motor vehicle to the vicinity of the homes of the latter at or near Broadway and 230th Street where they were discharged. Plaintiff and defendant then proceeded to and ate in a diner at or near the Bronx-Yonkers border. They then proceeded in defendant's motor vehicle to their homes, the defendant operating the vehicle. Traveling southerly underneath the elevated railroad, at 20 to 22 miles per hour, just south of 230th Street, at or about 2:30 A.M. of November 5, the left front side of defendant's motor vehicle struck a pillar of the elevated structure. Plaintiff, seated to the right of defendant operator, sustained multiple fractures and other serious and permanent injuries and was rendered unconscious.

Officer Quinn arrived at the scene at 2:45 A.M. He found the front of defendant's motor vehicle in contact with pillar No. 178. Defendant then stated to Officer Quinn he had lost control of the vehicle and struck the pillar.

Plaintiff's Exhibit 2 is a southerly view photograph of the site of the occurrence. The westerly pillars of the elevated structure north of 230th Street are mounted on the sidewalk. South and beyond the northwesterly curb of Broadway and 230th Street the elevated structure and the roadway curve in a southwesterly direction. South of 230th Street the pillars of the elevated structure are mounted on the roadway. A motor vehicle proceeding, as was the defendant's, southerly within a few feet of the westerly curb from a point north of 230th Street would be likely to strike the first westerly pillar south of 230th Street unless its direction was changed.

Defendant's testimony is he was proceeding southerly, near the westerly curb at 20 to 22 miles per hour; that his visibility was no less than a city block, and he did not change the direction of his car or slow it down until he saw a woman dart from the second pillar south of 230th Street, at which time his car was six feet north of the said pillar. It was only then that the defendant attempted to slow down and change the direction of his motor vehicle.

The physical facts and defendant's testimony, even if his statement that a woman darted in the path of his vehicle from behind a pillar is credited, nevertheless establish negligent operation in failing to slow down and change the direction of the vehicle in the light of the pillars of the elevated structure in the roadway south of 230th Street.

Plaintiff, who was dozing from time to time, was indefinite as to which pillar was struck by defendant's vehicle. His testimony was that it might have been the second or third pillar on Exhibit 4 if the pillar mounted on the northwest curb is included, which served to identify the first or second pillar south of 230th Street. If defendant's vehicle struck the first pillar south of 230th Street, then the occurrence was the consequence of defendant's failure to slow down and change direction and, again assuming the presence of the woman, the failure to observe her despite an unobstructed view. Defendant's testimony that his vehicle struck the second pillar south of 230th Street is inconsistent with his testimony that he did not change his direction until he was six feet north of the second pillar. It is to be observed that Officer Quinn's testimony is that the vehicle struck pillar No. 178 and the defendant's filed report of the accident likewise identifies the same numbered pillar. No attempt was made to establish which was No. 178 of the first two pillars south of 230th Street.

The trial court's determination was based on the finding that a woman crossed from behind a pillar into the path of defendant's vehicle and that " he [plaintiff] saw an object". If this be assumed, it is nevertheless clear that defendant's operation of his vehicle was careless and negligent in the failure to slow down and change direction on approaching 230th Street as dictated by the altered direction of the roadway and the presence thereon of the pillars. The actions of the woman may have contributed to the occurrence which had already been made possible by the defendant's careless operation.

Moreover, there is no credible basis for the finding of the trial court that a woman crossed from behind a pillar into the path of defendant's vehicle. Defendant's initial statement to Officer Quinn at the site of the occurrence was that he lost control; he made no mention of the woman. Plaintiff testified that at the hospital to which plaintiff and defendant were admitted and where they became patients as a result of the accident, the following transpired:

" Q. What did you say to him and what did he say to you concerning the happening of the accident? A. Well, I asked him, I said, what exactly happened, because I was half asleep and he says, I was driving down and all of a sudden he seen a shadow, he swerved the car to avoid and he hit the pole.

" Q. And at the time that he told you this did he say that he swerved his car? A. When he swerved the car to avoid —

" Mr. Doherty: Objected to, he has already said that.

" The Court: He said that, he said the defendant told him he saw a shadow and he swerved his car and he ran into the pillar.

" Q. In which direction if any did he say he swerved his automobile? A. He swerved to the left."

It appears therefore that after the accident the defendant recalled " a shadow ". Defendant's motor vehicle accident report dated November 8, 1958, three days after the occurrence, and filed November 13, 1958, for the first time asserts a " woman [sic] pedestrian darted out across street from West side

to East in front of car against light avoiding to strike pedestrian swerved car into elevator piller [*sic*] ". On his examination before trial on February 3, 1961, defendant testified the woman "dashed out from behind the El pillar and I swerved to the right". Before signing the deposition the defendant changed the direction of the swerve from "right" to "left". At the trial defendant testified the woman came from behind the pillar and to avoid her defendant swerved to the left into the pillar. Defendant explained if he had turned right "there was a safety zone there, I would have hit the woman". The physical facts, evidenced by plaintiff's Exhibits 4 and 10, show no safety zone near the pillar identified by defendant and a very wide area for a right turn away from the pillar and the alleged woman.

It will be recalled that defendant's motor vehicle accident report stated the woman crossed from the west side to the east. If that had been his testimony at the trial, then it would have clearly appeared defendant's view of the woman was completely unobstructed and that he had ample time and space to avoid her in the exercise of reasonable care.

The trial court's version of plaintiff's testimony that he saw "an object" as some support for his crediting defendant's testimony manifests a misconception of the evidence. Plaintiff's reference to a "shadow" is explained by the change in location of the pillars of the elevated structure south of 230th Street from the westerly sidewalk to the roadway causing a different pattern of shadows, emphasized and distorted by plaintiff's drowsy condition.

On this record there should be a judgment for the plaintiff or, in the interests of justice, a new trial at which the physical facts which are so clearly material and determinative may be conclusively established.

Breitel, J. P., Eager and Steuer, JJ., concur in decision; McNally and Bastow, JJ., dissent in opinion.

Judgment affirmed, with costs to the respondent.